UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF VEON LTD DIRECTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: **18-mc-94** |

**MEMORANDUM OF LAW IN SUPPORT OF VEON LTD.'S EX PARTE
APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO
TAKE DISCOVERY IN AID OF FOREIGN PROCEEDINGS**

Pursuant to 28 U.S.C. § 1782, VEON Ltd. ("VEON", formerly VimpelCom Ltd.) submits this application (the "Application") for an order permitting discovery for use in foreign proceedings from the following entities: The Bank of New York Mellon Corporation; JPMorgan Chase, N.A.; Deutsche Bank Trust Co. Americas; Bank of China; Barclays Bank PLC; BNP Paribas USA; Citibank N.A.; The Clearing House Payments Company LLC; Commerzbank AG; HSBC Bank USA, N.A.; Société Générale S.A.; Standard Chartered Bank USA; UBS AG; Wells Fargo Bank, N.A.; Beltone Financial USA, LLC and Auerbach Grayson and Company, LLC (together, the "Discovery Targets").

**I.     INTRODUCTION**

1.     VEON is a global telecommunications company incorporated in Bermuda. On September 30, 2017, VEON was granted an award totaling approximately €150,000,000 in an arbitration against Orascom TMT Investments, S.à r.l., ("OTMTI", formerly Weather Investments II S.à r.l) conducted pursuant to the London Court of International Arbitration ("LCIA") Rules (the "Award"). OTMTI has refused to voluntarily satisfy its payment obligations and VEON initiated enforcement proceedings in a number of jurisdictions, including

England, Malta, and the Cayman Islands (cumulatively, the "Ongoing Enforcement Proceedings"). VEON is also evaluating options for enforcement in other jurisdictions in which OTMTI is believed to have assets (the "Prospective Enforcement Proceedings").

2. VEON is seeking authorization to issue subpoenas to financial institutions and OTMTI-related entities believed to have sufficient information to identify additional executable assets held by OTMTI in England, Malta, and the Cayman Islands or in other foreign countries in which proceedings are likely to be brought. This discovery is thus specifically sought to aid the Ongoing Enforcement Proceedings and to enable VEON to commence Prospective Enforcement Proceedings.

## II. FACTUAL BACKGROUND

3. On September 30, 2017, the arbitral tribunal issued the Award requiring OTMTI to pay VEON €139,618,964 in damages and awarding VEON approximately £10,500,000 in fees and costs. *See* Declaration of Stuart Terence Dutson, dated March 8, 2018 ("Dutson Decl."), ¶ 1. To date, OTMTI has not made any payment to VEON. Dutson Decl., ¶ 12.

4. On October 9, 2017, the English High Court issued an *ex parte* order granting VEON's petition. *Id. ¶ 13; see* Exhibit E to the Dutson Decl.

5. On October 23, 2017, OTMTI filed two applications. Dutson Decl., ¶14; see Exhibit F to the Duston Decl. The first application, brought pursuant to section 68 of the English Arbitration Act 1996, sought to set aside a portion of the Award relating to one of the three tax audits. Dutson Decl., ¶¶ 14-15. The second application sought a stay of the proceedings until the first application was fully decided. Dutson Decl., ¶ 16. The amount challenged in OTMTI's first application pertains only to a discrete and relatively small portion of the Award (only €25,123,479 of the total damages award of €139,618,964) and accordingly the remainder of the Award should properly be considered final and binding. VEON is thus

seeking a consent order to permit enforcement of the unchallenged part of the Award in England while OTMTI's challenge to the remainder of the Award is adjudicated. Dutson Decl., ¶ 17.

6. VEON has taken additional steps in England to ensure that it will be able to execute against OTMTI's assets. In particular, VEON has sought information about OTMTI's assets held in England to determine if and against which assets it may execute. Dutson Decl., ¶¶ 18; 20-21. However, an absence of fulsome information about OTMTI's assets, including those held in England, has impeded such efforts. Dutson Decl., ¶ 26. In particular, information is needed to present to the English courts to provide the factual basis of additional discovery of English entities and individuals and to identify additional assets against which VEON may pursue execution.

7. VEON has also initiated recognition and enforcement proceedings with respect to the unchallenged portion of the Award in Malta, and the Cayman Islands.[1]

8. VEON applied for recognition of the Award in Malta on October 11, 2017 and OTMTI objected. *See* Declaration of Louis Cassar Pullicino, dated March 8, 2018 ("Pullicino Decl.") ¶ 3; *see* Exhibits K and L to the Pullicino Decl. Prior to a hearing before the Chairman of the Malta Arbitration Centre, on December 20, 2017, VEON filed written submissions in response to OTMTI's objection and, on January 15, 2018, OTMTI submitted a reply. The hearing took place on January 19, 2018 and at the time of this application the outcome remains pending. VEON also obtained an interim garnishee order from the Maltese Court with respect to OTMTI's financial assets held with third parties in Malta and an interim seizure order with respect to OTMTI's shares in its Maltese subsidiaries. Pullicino Decl. ¶ 4; *see* Exhibits O and P to the Pullicino Decl. This order has been served on various banks, tax authorities, and two

---

[1] VEON also sought recognition and enforcement of the Award in Luxembourg, however, the discovery sought by this motion is not for use in those proceedings.

subsidiaries of OTMTI in Malta.  As OTMTI has objected to the recognition of the Award in Malta and may still object to the interim garnishee and seizure orders, these proceedings are considered ongoing.

9. On November 10, 2017, following an *ex parte* hearing, the Grand Court of the Cayman Islands issued an order for the enforcement of the unchallenged part of the Award.  *See* Declaration of Luke Ryan Stockdale, dated March 8, 2018 ("Stockdale Decl."), ¶ 3; *see* Exhibit T to the Stockdale Decl.  On 21 December 2017, OTMTI applied to the Grand Court to set aside the *ex parte* enforcement order.  Although the grounds for the application are unclear,  the next step in these proceedings is to fix a date for an *inter partes* oral hearing of the application.  The parties will then be able to file evidence and make written and oral submissions to the Grand Court on the question of whether the order granting VEON leave to enforce part of the Award should be continued or set aside.  The proceedings remain ongoing and the hearing will likely take place in the spring of 2018.  Stockdale Decl., ¶¶ 5-6.

10. VEON initiated these enforcement proceedings after conducting extensive due diligence to identify assets held by OTMTI and its various subsidiaries throughout the world.  Dutson Decl., ¶¶ 22-23.  OTMTI's 2016 consolidated financial statements indicate that it holds direct and indirect interests in various entities throughout the world, including in Europe, North America, the Middle East, Africa, South America and Asia and that it is ultimately controlled by companies owned by members of the Sawiris family.  *See* Duston Decl., Ex. C, pp. 5 and 58.  Many of its direct subsidiaries are incorporated in Malta and the Cayman Islands. According to VEON's investigations, OTMTI's most valuable assets, such as its shares in the listed Egyptian company Orascom Telecom Media and Technology Holding SAE, which it valued at close to

USD 400 million at the end of 2015, are largely held indirectly through Cayman and Maltese holding companies.  S*ee* Dutson Decl. Ex. C., p. 6; Ex. G., p. 17; Ex. H, p. 14.

11.     OTMTI's 2015 and 2016 consolidated financial statements show significant fund flows denominated in US dollars between OTMTI and its subsidiaries in the form of loans, advances and asset disposals/acquisitions.  *See* Dutson Decl., Ex. I, pp. 121-122; Ex. C, p. 12.  Due to the limited information in OTMTI's accounts of the relevant entities and the fact that some of these entities have no account information available, it is difficult if not impossible to identify any details of the relevant fund flows.  Dutson Decl., ¶ 20; Ex. I, pp. 121-122.  In particular, VEON has been unable to obtain evidence of OTMTI's major banking relationships from publicly available financial disclosures and the information that has been obtained is already one to two years old.  *Id*.  All of these factors have complicated VEON's enforcement claims.

12.     Given that OTMTI is known to conduct business in US dollars, it is highly likely that the financial entities from whom VEON seeks discovery have acted as correspondent or intermediary banks for these transactions and may in fact have more substantial relationships with OTMTI and/or its subsidiaries.  Specifically, for example, OTMTI holds London-listed global depositary receipts ("GDRs") in Orascom Egypt that deposited in Bank of New York Mellon in New York and dividends are paid out of a BNY Mellon branch in New York.  Further, Beltone is an indirect subsidiary of Orascom Telecom Media & Technology Holding SAE ("Orascom Egypt"), in which OTMTI is a majority shareholder.  *See* Dutson Decl. Ex. C, p. 198.  Another subsidiary of Orascom Egypt, Beltone Financial Holding SAE ("Beltone Financial") acquired Auerbach Grayson in February 2017.  *See* Dutson Decl. Ex. Q, p. 18.

13. It is therefore likely that the Discovery Targets have information as to the existence, value and location of additional OTMTI assets or foreign entities that may be custodians of this information is therefore critical to aid the Ongoing Enforcement Proceedings. Such information is also necessary for VEON to assess whether and where it may bring enforcement proceedings against OTMTI's assets in other jurisdictions.

## III. ARGUMENT

### A. The Legal Standard

14. Pursuant to 28 U.S.C. § 1782, this Court has broad discretion to authorize the collection of evidence from persons located within its jurisdiction for use in "a proceeding in a foreign or international tribunal" upon the application of an "interested person." Specifically, § 1782 (a) states:

> The district court of the district [where] a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person … [and unless] prescribe[d] otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

15. In *Intel Corp. v. Advanced Micro Devices*, the seminal case on § 1782(a) applications, the Supreme Court held that § 1782 requires the applicant to meet three threshold conditions: (1) the person from whom discovery is sought resides or is found in the district of the court to which the application is made; (2) the application is made by a foreign or international tribunal or any "interested person"; and (3) the discovery is "for use in a proceeding in a foreign or international tribunal." 542 U.S. 241, 246 (2004).

16. The Supreme Court also held that district courts should consider the following four discretionary factors: (1) whether the evidence sought is within the foreign tribunal's

jurisdiction; (2) the nature of the foreign tribunal and its receptivity to United States judicial assistance; (3) whether the request is an attempt to circumvent the foreign proof-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-265.  This discretion should be exercised in light of "the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Mees v. Buiter,* 793 F.3d 291, 297–98 (2d Cir. 2015) (internal citations omitted).

> **B.** **The Applicant Satisfies the Three Threshold Requirements of § 1782**
>
> **1.** **The Discovery Targets Reside or are Found in the District of this Court**

17. The first statutory requirement is satisfied because, upon information and belief, each Discovery Target maintains a headquarters or branch location within this district. *See In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (a legal entity "reside[s] or [is] found in" a district under § 1782 when it has engaged in systematic and continuous activity in the district as evidenced by, for example, incorporation or headquarters within the district).  Moreover, as financial institutions, each Discovery Target transacts business in this district. *See In re Application of Kreke Immobilien KG*, 2013 WL 5966916, at *3 (S.D.N.Y. Nov. 8, 2013) (Deutsche Bank AG's branch in the Southern District of New York satisfied the first requirement of § 1782).

18. As discussed below, each of the Discovery Targets resides or is found in the Southern District of New York because it has a headquarters or location and regularly transacts business within the district:

- The Bank of New York Mellon Corporation is a financial services institution that regularly transacts business in this District, maintains several branches here, and is headquartered at One Wall Street, New York, New York 10286;

- Bank of China is a financial services institution that regularly transacts business in this district and maintains at least one branch at 1045 Avenue of the Americas, New York, NY 10018;

- Barclays Bank PLC is a financial services institution that regularly transacts business in this District and maintains at least one branch at 745 Seventh Avenue New York, NY 10019;

- BNP Paribas USA is a financial services institution that regularly transacts business in this District and maintains at least two branch locations here at 787 7th Avenue, New York, NY 10019, and 1350 Avenue of the Americas, New York, NY 10019;

- Citibank, N.A. is a financial services institution that regularly transacts business in this district, maintains several branches here and is headquartered at 399 Park Avenue, New York, New York 1004;

- The Clearing House Payments Company LLC ("CHIPS") provides both transmission of instruction messages and settlement of funds between institutions that is used to process international U.S. dollar funds transfers made among international banks. CHIPS maintains an office at 1114 Avenue of the Americas, 17th Floor, New York, NY 10036;

- Commerzbank AG is a financial services institution that regularly transacts business in this District and maintains a branch at 225 Liberty Street, New York, NY 10281;

- Deutsche Bank Trust Co. Americas is a financial services institution that regularly transacts business in this district and maintains a branch at 60 Wall Street, New York, NY 10005;

- HSBC Bank USA, N.A. is a financial services institution that regularly transacts business in this District, maintains several branches here, and is believed to be headquartered at 452 Fifth Avenue, New York, NY 10018;

- JPMorgan Chase, N.A. is a financial services institution that regularly transacts business in this district, maintains several branches here, and is headquartered at 270 Park Avenue, New York, NY 10017;

- Société Générale S.A. is a financial services institution that regularly transacts business in this District and has at least two branch locations here at 245 Park Avenue, New York, NY 10167, and 630 Fifth Avenue, New York, NY 10111;

- Standard Chartered Bank USA is a financial services institution that regularly transacts business in this District and maintains a branch at 1095 Avenue of Americas, New York, NY 10036;

- UBS AG is a financial services institution that regularly transacts business in this District and maintains at least one branch location here at 1285 Avenue of the Americas, New York, NY 10019;

- Wells Fargo Bank, N.A. is a financial services institution that regularly transacts business in this district and maintains several branches here, including a branch at 120 Seventh Avenue, New York, NY 10011;

- Beltone is a company that maintains its headquarters at 708 Third Avenue, 19th Floor, New York City, NY 10017; and

- Auerbach Grayson is a brokerage firm that maintains its headquarters at 25 West 45th Street, New York City, NY 10036.

### 2.  The Discovery Sought is "For Use" in Ongoing Foreign Proceedings

19. VEON's application meets the § 1782 requirement that the discovery sought be "for use in a proceeding in a foreign or international tribunal" because VEON is seeking discovery for use in Ongoing Enforcement Proceedings and Prospective Enforcement Proceedings. *See In re Application of Temporary Service Ins. Ltd.*, 2009 WL 2843258 (W.D.N.Y. Aug. 28, 2009) (granting discovery to assist a judgment creditor in locating assets to enforce a judgment in Cayman Islands.)

20. The evidence sought here is for use in recognition and enforcement proceedings initiated in England before the English High Court; Malta before the Malta Court and Malta Arbitration Centre; and Cayman Islands before the Grand Court of the Cayman Islands. Dutson Decl., ¶ 13; Pullicino Declaration, ¶¶ 3-4; Stockdale Declaration, ¶ 3.  These courts are foreign or international tribunals under § 1782. *See Intel,* 542 U.S. at 259 (in enacting § 1782, "Congress recogni[zed] that judicial assistance would be available 'whether the foreign or

international proceeding or investigation is of a criminal, civil, administrative, or other nature.'" (citing S. Rep. No. 1580, at 9)).

21. To be "for use" in a foreign proceeding, an applicant need not prove that the discovery will be used in the proceedings, but rather that the discovery sought is "relevant" to a party's claim, consistent with the Federal Rules of Civil Procedure. *See, e.g., In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) (holding that "the proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)"); *see also* Federal Rules of Civil Procedure, Rule 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim.)

22. The discovery sought here pertaining to the existence, location and value of OTMTI's assets in England, Malta, or the Cayman Islands is directly relevant to the Enforcement Proceedings in those countries insofar as the information will substantiate VEON's enforcement and execution claims as against particular assets and will assist the courts in evaluating such claims. The information will further support local discovery efforts by identifying additional local entities that are likely to have relevant information as to existence, location and value of OTMTI's assets. This satisfies the "for use" requirement in § 1782.

23. Evidence as to assets held in other foreign jurisdictions will be used to initiate additional enforcement proceedings against OTMTI. *See* Dutson Decl., ¶ 21.  VEON has already pursued enforcement in a number of jurisdictions and is currently considering initiating enforcement proceedings in other jurisdictions, demonstrating that objectively such actions are "within reasonable contemplation," in satisfaction of this statutory requirement. *See Intel*, 542 U.S. at 253 (a qualifying proceeding need not be "pending" or "imminent" but merely "within reasonable contemplation."); *see also In re Mangouras*, 2017 WL 4990655, at *5 (S.D.N.Y.

Oct. 30, 2017) ("where an applicant has not yet initiated a foreign proceeding, discovery is available when [it] may help the applicant either to plead or to prove the anticipated claims); Dutson Decl., ¶ 21.

### 3. The Applicant is an "Interested Person"

24. VEON is an "interested person" under § 1782 as a party to the Ongoing Enforcement Proceedings and would be a party to any Prospective Enforcement Proceedings.

### C. The Discretionary Factors Weigh in Favor of Granting the Requested Discovery

25. The *Intel* factors weigh in favor of this Court granting VEON's application. First, the Discovery Targets are not named parties to the Ongoing Enforcement Proceedings nor are they likely to be named parties to the Prospective Enforcement Proceedings and the local courts have no other means to compel the production of the specific evidence sought here. *See* Dutson Decl., ¶ 31; Pullicino Decl., ¶ 7; Stockdale Decl., ¶ 8. This means that the evidence VEON is seeking is likely "unobtainable … absent § 1782 aid[.]" *Intel,* 542 U.S. at 244.

26. Second, the discovery requests do not seek to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65; *see also* Dutson Decl., ¶ 31; Pullicino Decl., ¶ 7; Stockdale Decl., ¶ 8.

27. Third, the jurisdictions in which enforcement has been pursued, namely England, Malta, and the Cayman Islands are receptive to the U.S. Federal Court assistance. *Id.; see also* Dutson Decl., ¶ 31; Pullicino Decl., ¶ 7; Stockdale Decl., ¶ 8. In fact, district courts have previously granted § 1782 discovery for use in these same jurisdictions. *See, e.g., La Suisse, Societe d'Assurances Sur La Vie v. Kraus,* 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (England);

*In re King.com Ltd.,* 2016 WL 4364286, at *8 (N.D. Cal. Aug. 16, 2016) (Malta)[2]; *In re Gushlak*, 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011), *aff'd sub nom. Gushlak v. Gushlak*, 486 Fed. App'x 215 (2d Cir. 2012) (Cayman Islands).

28.  Fourth, the discovery sought here is narrowly tailored so as to solicit only information that will be relevant to VEON's enforcement and execution claims. The discovery requests will also not impose any undue burden or intrusion on the Discovery Targets. The information sought from the financial institutions is easily retrievable by sophisticated financial institutions. The information sought from the entities related to OTMTI pertain to their relationship and interactions with OTMTI and its subsidiaries and such information is likely readily within their possession, custody or control. *See Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) ("[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony") (internal citations omitted).

29.  Finally, assisting VEON's efforts to identify assets against which it may enforce the Award promotes U.S. public policy favoring the recognition and enforcement of international arbitration awards and the expeditious resolution of international disputes.

## IV. CONCLUSION

WHEREFORE, because the Application complies with the requirements of 28 U.S.C. § 1782, and the discretionary factors weigh in favor of it being granted, VEON respectfully moves the Court to issue an order granting the Application and authorizing the issuance of the subpoena attached as Exhibits A-1, A-2 and A-3.

---

[2]  The NDCA granted § 1782 discovery in aid of proceedings in Malta and otherwise recognized that the Maltese Courts were receptive to such evidence. The Court, however, later quashed the subpoena finding that given the particular posture/status of the underlying proceedings, such discovery was no longer appropriate.

DATED: March 14, 2018                     Respectfully submitted


    */s/ Kiera Gans*

Michael Hynes
Kiera Gans
Natalie Kanerva
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 335-4500
Fax: (212) 335-4501
michael.hynes@dlapiper.com
kiera.gans@dlapiper.com
natasha.kanerva@dlapiper.com


*Attorneys for VEON Ltd.*