UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF VEON Ltd. DIRECTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: |

DECLARATION OF STUART TERENCE DUTSON IN SUPPORT
OF APPLICATION OF VEON LTD. FOR DISCOVERY IN AID OF
FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

I, Stuart Terence Dutson, under penalty of perjury, pursuant to 28 U.S.C. § 1746, do hereby declare:

1. I am a partner in the firm of Simmons & Simmons LLP in London, England. I represent the applicant, VEON Ltd. ("VEON", formerly VimpelCom Ltd.) in enforcement proceedings related to an arbitral award issued by a tribunal convened under the London Court of International Arbitration ("LCIA") Rules on September 30, 2017 (the "Award"). A true and correct copy of the Award, together with the Tribunal's subsequent memorandum amending the Award, is attached hereto as Exhibit B.

2. I am duly authorized to make this statement on behalf of VEON in support of its petition for discovery pursuant to 28 U.S.C. § 1782 in so far as that petition relates to ongoing enforcement efforts in England (the "English Enforcement Proceedings") and to other proceedings that VEON may initiate in other jurisdictions (the "Prospective Enforcement Proceedings").

**I. The Parties and Background to the Dispute**

3. The applicant, VEON, is a global telecommunication company incorporated in Bermuda and registered with the Chamber of Commerce in Amsterdam, the Netherlands.

4. The respondent in the arbitration, Orascom TMT Investments S.à r.l. ("OTMTI") (formerly "Weather Investments II S.à r.l.") is a holding company with registered

offices at 31-33 Avenue Pasteur, Luxembourg L-2311. I understand from OTMTI's consolidated financial statements for the year ending December 31, 2016, that OTMTI holds direct and indirect interests in various entities around the world (including Europe, North America, the Middle East, Africa, South America and Asia) and that it is ultimately controlled by companies owned by members of the Sawiris family. *See* OTMTI 2016 Consolidated Financial Statements, attached hereto as Exhibit C, pp. 5 and 58. The Chairman of OTMTI is the Egyptian businessman, Naguib Onsi Sawiris. *See Id.,* p. 4.

## II. LCIA Arbitration

5. On July 8, 2015, VEON filed a Request for Arbitration alleging breach of the amended and restated share sale and exchange agreement dated April 15, 2011 entered into between VEON, OTMTI, Wind Telecom S.p.A. and Wind's shareholders for the sale of shares in Wind to VEON (the "SSE Agreement"). Specifically, VEON alleged that OTMTI failed to make payments to it under the indemnity provisions of the SSE Agreement in respect of the settlement of three distinct Italian tax authority investigations and audits into parts of the Wind business and its group companies (the "Wind Telecom Audit," the "WAHF Audit" and the "Wind Telecomunicazioni Audit"). VEON further sought damages in the amount of €150,730,027.99 plus post-award interest, costs and expenses. OTMTI denied VEON's claims and, in turn, counterclaimed against VEON for royalties associated with VEON's use of the name "Orascom."

6. Although the hearings were held in New York, USA, the seat of arbitration was London, England. The arbitration was conducted pursuant to the LCIA Rules.

7. The Tribunal, consisting of Philip Lacovara (appointed by VEON), Kenneth Kramer (appointed by OTMTI) and Jean E. Kalicki (selected by the party-appointed

arbitrators) found in VEON's favor. The Tribunal ordered OTMTI to pay VEON €139,618,964 in damages plus legal and arbitration costs.

8. The Award contained two minor errors (one with respect to the currency in which legal costs were to be paid and another regarding the costs of the arbitration) that have since been rectified and thus form part of the original Award. Thus, the Tribunal awarded VEON USD10,342,867 in legal costs and £185,245.07 in arbitration costs. *See* Ex. B.

9. The Award does not provide any grace period for OTMTI to pay the sums due thereunder. Instead, the Award provides for pre-Award interest on damages (which runs from the date on which the indemnified amounts under the SSE Agreement came due to the date of the Award), and post-award interest which begins to accrue immediately upon the date of the Award.

10. The Award is final and binding and the parties have "undertake[n] to carry out any award immediately and without delay." *See, e.g.,* Section 13.7(a)(vi) of the SSE Agreement; *see also* Article 26.8 of the LCIA Arbitration Rules. The amounts ordered to be paid by OTMTI pursuant to the Award are therefore due and payable.

11. On October 3, 2017, VEON's counsel in the arbitration, Debevoise & Plimpton LLP, sent a letter to OTMTI's counsel at Cleary Gottlieb Steen & Hamilton LLP in New York City, requesting payment of the amounts ordered in the Award. A true and correct copy of the letter from Debevoise & Plimpton to Cleary Gottlieb, dated October 3, 2017 is attached hereto as Exhibit D.

12. As of the date of this declaration, however, no payment has been received from OTMTI.

### III. English Enforcement Proceedings

13. On October 4, 2017, VEON filed for permission to enforce the Award in England and Wales. On October 9, 2017, the English High Court, granted VEON permission

under section 66(1) of the Arbitration Act 1996 to enforce the Award (save for a small portion relating to legal costs due to the currency error mentioned above at paragraph 8) in the same manner as a judgment or order of the High Court with the same effect (the "Enforcement Order"). A true and correct copy of the Enforcement Order, dated October 9, 2017 is attached hereto as Exhibit E.

14.  On October 23, 2017, OTMTI filed two applications with the English High Court. A true and correct copy of OTMTI's applications dated October 23, 2017 are attached hereto as Exhibit F.

15.  The first application was submitted under section 68 of the Arbitration Act 1996 challenging a discrete part of the Award relating to the Wind Telecom Audit (the "section 68 Challenge"). OTMTI's section 68 Challenge is based on an alleged failure by the Tribunal to deal with all of the issues that were put before it, in particular, relating to OTMTI's evidence of Italian law. OTMTI contends that this amounts to a serious irregularity under section 68(2)(d) of the Arbitration Act 1996. The section 68 Challenge has been listed for hearing on March 22, 2018. This section 68 Challenge relates to a small and distinct part of the Award. The challenged amount is only €25,123,479 of the total damages award of €139,618,964, together with costs associated with that part.

16.  The second application sought (i) to set aside the Enforcement Order and (ii) to stay enforcement of the part of the Award challenged by OTMTI under section 68 until that challenge is finally determined.

17.  The limitation period for challenging the remainder of the Award expired on September 28, 2017 and thus OTMTI is unable to bring any further challenges. In light of these facts, VEON requested that OTMTI agree to enforcement of the unchallenged part of the Award. OTMTI did not agree to this proposal and OTMTI's application to set aside the entirety of the Enforcement Order was listed for hearing on January 12, 2018.

18. On January 10, 2018 OTMTI asserted in correspondence that it hoped to be in a position to pay that part of the Award not subject to the section 68 Challenge *"very shortly, within a matter of days,"* stated that such payment would make the hearing on January 12 redundant and requested that OTMTI have until January 26 to pay the unchallenged part of the Award. VEON did not agree to vacate the January 12 hearing but rather sought further details about the arrangements OTMTI had made to make payment. The hearing went ahead on January 12, and the skeleton argument lodged with the Court on behalf of OTMTI stated that payment would be made *"certainly by 26 January 2018."*

19. At the hearing on January 12, 2018, enforcement of the part of the Award subject to OTMTI's section 68 Challenge was stayed pending the outcome of that section 68 Challenge but the remainder of the Enforcement Order remained intact, permitting VEON to enforce the unchallenged part of the Award, being €111,969,442 together with the post-Award interest due thereon. VEON was awarded legal costs of the hearing in the sum of £100,000, which OTMTI paid on January 26, 2018.

20. OTMTI has not paid anything in satisfaction of the Award and has since sought to impose conditions on payment of the unchallenged part of the Award – including requiring that VEON lift measures taken in Luxembourg to preserve assets (by way of *saisie-arrêt*) pending enforcement proceedings there. The correspondence between January 10 and the date of this Declaration is attached hereto as Exhibit U.

**IV.   Prospective Enforcement Proceedings**

21. VEON is also currently determining in which other jurisdictions it may pursue enforcement claims. The documentary evidence sought in this Application will be used to identify such jurisdictions, evaluate the viability of enforcement and execution under local law, and where appropriate, initiate proceedings.

## V. OTMTI's Affiliated Foreign Entities

22. I understand that investigation and inquiries conducted by VEON have identified the main structure of OTMTI and its direct subsidiaries, which act as holding vehicles for OTMTI's primary operating entities. Some of OTMTI's direct subsidiaries, however, are incorporated in such jurisdictions as Malta and the Cayman Islands, which have minimal financial reporting requirements. The OTMTI group's most valuable assets, such as the holdings of global depositary receipts in the London-listed Egyptian company Orascom Telecom Media and Technology Holding SAE, which the OTMTI group valued at close to USD 400 million at the end of 2015 (in the 2015 annual accounts of OTMT Acquisition S.a.r.l., which are the latest available. OTMT Acquisition S.a.r.l. is the holding vehicle for the bulk of the GDRs), are largely held indirectly through Luxembourg, Cayman and Maltese companies. *See* OTMTI 2015 Non-Consolidated Financial Statement, attached hereto as Exhibit G, p. 17; OTMT Acquisition S.a r.l. 2015 Non-Consolidated Financial Statement, attached hereto as Exhibit H, p. 14; Ex. C, p. 6.

23. OTMTI's 2015 and 2016 consolidated financial accounts show significant fund flows denominated in US dollars (of the order of tens of millions of dollars) between OTMTI and its subsidiaries or affiliated undertakings in the form of loans, advances and asset disposals/acquisitions. *See* Exhibit C, pp. 121-122. However, due to the limited available information concerning OTMTI's accounts and accounts of the relevant entities (to the extent accounts are available, which is not the case for every affiliated entity), it is not possible to identify any details of the relevant fund flows. Ex. I, pp. 121-22. I understand that VEON has not been able to obtain information of OTMTI's major banking relationships from publicly available financial disclosures. Moreover, in most cases, information contained in the financial reporting by OTMTI and its operating entities is provided one to two years in arrears, further complicating enforcement of the Award.

## VI. Nature of Evidence Sought

24. VEON is seeking documentary evidence from various financial institutions, and two OTMTI-related entities Beltone Financial USA LLC ("Beltone") and Auerbach Grayson and Company, LLC ("Auerbach Grayson") (together, the "Discovery Targets"), all of which are found and transact business in the Southern District of New York.

25. The financial entities are those that act as correspondent or intermediary banks for US dollar-denominated wire transfers passing from international and domestic banks and vice versa. As I state above at paragraph 23, OTMTI is known to conduct business in US dollars (as demonstrated by the large loans denominated in US dollars provided by OTMTI to and received from) its subsidiaries and related companies). One example is a loan of over USD 159 million that OTMTI advanced to Marchmont Limited, its indirect Cayman-registered parent, in 2015. OTMTI 2016 Non-Consolidated Financial Statement, attached hereto as Exhibit J, p. 12.

26. VEON is aware (from OTMTI's latest financial accounts) that OTMTI has shares in a subsidiary in England and believes that OTMTI's cash is likely held in deposit accounts with European banks. However, without further information as to the existence, location and value of assets held by OTMTI in England, beyond the shares in its English subsidiary, VEON will not be in a position to enforce against such assets because it does not have the information required under English law to successfully bring enforcement proceedings. The documentary evidence sought in the present Application may therefore also be used to identify third parties in England from whom additional discovery may be sought pursuant to English law.

27. Beltone is an indirect subsidiary of Orascom Telecom Media & Technology Holding SAE ("Orascom Egypt"), in which OTMTI is the majority shareholder. *See* Ex. C, p. 198. Specifically, OTMTI holds 52.3% of London-listed global depositary receipts

("GDRs") in Orascom Egypt. OTMTI holds these both directly and through a wholly-owned subsidiary, OTMT Acquisition S.à r.l. Although London-listed, the prospectus from the GDRs identifies Bank of New York Mellon in New York as the depository for the shares. A recent press release discloses that dividends are paid via a New York branch of BNY Mellon. (available at: http://otmt.com/Files/Uploads/PressReleaseAttachments/259_OTMT%20Announces%20Details%20of%20Cash%20Dividend%20Distribution.pdf)

28. Orascom Egypt's financial accounts suggest that it owns Beltone through Beltone Financial Holding SAE, Egypt ("Beltone Financial"), in which Orascom Egypt owns 76.73. *See* Orascom Egypt Q2 2017 consolidated accounts, attached hereto as Exhibit R, p. 5. Orascom Egypt acquired the interest in Beltone Financial in November 2015 for USD 70 million. *See* Ex. I. p. 18. In February 2017, Beltone Financial acquired the US-based Auerbach Grayson Company, LLC for USD 24 million. *See* Orascom Egypt 2017 Q1 Accounts, attached hereto as Exhibit Q, p. 18. Auerbach Grayson is a brokerage firm, headquartered in New York that specializes in emerging and frontier markets. In addition, on its website, (available at https://www.agco.com/WorldWideBrokerNetworkDetail.aspx?PartnerId=346) Auerbach Grayson lists Beltone Financial as one of its global brokerage relationships, which suggests that Auerbach Grayson may be managing funds on behalf of Beltone Financial or its parent, Orascom Egypt. Such detail, however, is not included in the available financial disclosures by these companies.

29. VEON has not been able to confirm the precise corporate relationships between these various entities by reference to any official corporate records or trace the flow of funds from the various transactions. On information and belief, however, it is likely that both Beltone and Auerbach Grayson have documents relevant to the nature, location and

value of OTMTI's accounts and other assets including details of non-US bank accounts which Orascom Egypt and/or Beltone Financial used to purchase Auerbach Grayson.

30. I therefore believe it is likely that the Discovery Targets have documents relevant to the nature, location and value of OTMTI's assets which are likely to support VEON's claims in England and elsewhere. The specific evidence sought is from financial institutions and is predominantly evidence of wire transfers involving OTMTI and its affiliates and/or bank accounts held by OTMTI and its affiliates.

31. I can confirm that there is no basis to believe that the English courts would not be receptive to the evidence that VEON is here seeking. I can also confirm that, to the best of my knowledge, there are no local rules prohibiting the use or admission of this evidence to support the English Enforcement Proceedings and that obtaining this evidence does not circumvent any local evidentiary restrictions or policies. Moreover, neither of the Discovery Targets are neither named parties to the English Enforcement Proceedings, nor do I expect them to become named parties to these or any Prospective Enforcement Proceedings. Judicial assistance pursuant to § 1782 thus may be the only means by which this evidence may be obtained.

32. It is my understanding based on publicly available information that each of the Discovery Targets is found or transacts business within the Southern District of New York. Specifically:

- The Bank of New York Mellon Corporation is a financial services institution that regularly transacts business in this District, maintains several branches there, and is headquartered at 225 Liberty Street, New York, New York 10286;

- JPMorgan Chase, N.A. is a financial services institution that regularly transacts business in this District, maintains several branches there, and is headquartered at 270 Park Avenue, New York, NY 10017;

- Deutsche Bank Trust Co. Americas is a financial services institution that regularly transacts business in this District and maintains a branch at 60 Wall Street, New York, NY 10005;

value of OTMTI's accounts and other assets including details of non-US bank accounts which Orascom Egypt and/or Beltone Financial used to purchase Auerbach Grayson.

30. I therefore believe it is likely that the Discovery Targets have documents relevant to the nature, location and value of OTMTI's assets which are likely to support VEON's claims in England and elsewhere. The specific evidence sought is from financial institutions and is predominantly evidence of wire transfers involving OTMTI and its affiliates and/or bank accounts held by OTMTI and its affiliates.

31. I can confirm that there is no basis to believe that the English courts would not be receptive to the evidence that VEON is here seeking. I can also confirm that, to the best of my knowledge, there are no local rules prohibiting the use or admission of this evidence to support the English Enforcement Proceedings and that obtaining this evidence does not circumvent any local evidentiary restrictions or policies. Moreover, neither of the Discovery Targets are neither named parties to the English Enforcement Proceedings, nor do I expect them to become named parties to these or any Prospective Enforcement Proceedings. Judicial assistance pursuant to § 1782 thus may be the only means by which this evidence may be obtained.

32. It is my understanding based on publicly available information that each of the Discovery Targets is found or transacts business within the Southern District of New York. Specifically:

- The Bank of New York Mellon Corporation is a financial services institution that regularly transacts business in this District, maintains several branches there, and is headquartered at 225 Liberty Street, New York, New York 10286;

- JPMorgan Chase, N.A. is a financial services institution that regularly transacts business in this District, maintains several branches there, and is headquartered at 270 Park Avenue, New York, NY 10017;

- Deutsche Bank Trust Co. Americas is a financial services institution that regularly transacts business in this District and maintains a branch at 60 Wall Street, New York, NY 10005;

- Bank of China is a financial services institution that regularly transacts business in this District and maintains at least one branch at 1045 Avenue of the Americas, New York, NY 10018;

- Barclays Bank PLC is a financial services institution that regularly transacts business in this District and maintains at least one branch at 745 Seventh Avenue New York, NY 10019;

- BNP Paribas USA is a financial services institution that regularly transacts business in this District and maintains at least two branch locations there at 787 7th Avenue, New York, NY 10019, and 1350 Avenue of the Americas, New York, NY 10019;

- Citibank, N.A. is a financial services institution that regularly transacts business in this District, maintains several branches there and is headquartered at 399 Park Avenue, New York, New York 1004;

- The Clearing House Payments Company LLC ("CHIPS") provides both transmission of instruction messages and settlement of funds between institutions that is used to process international U.S. dollar funds transfers made among international banks. CHIPS maintains an office at 1114 Avenue of the Americas, 17th Floor, New York, NY 10036;

- Commerzbank AG is a financial services institution that regularly transacts business in this District and maintains a branch at 225 Liberty Street, New York, NY 10281;

- HSBC Bank USA, N.A. is a financial services institution that regularly transacts business in this District, maintains several branches there, and is believed to be headquartered at 452 Fifth Avenue, New York, NY 10018;

- Société Générale S.A. is a financial services institution that regularly transacts business in this District and has at least two branch locations there at 245 Park Avenue, New York, NY 10167, and 630 Fifth Avenue, New York, NY 10111;

- Standard Chartered Bank, USA is a financial services institution that regularly transacts business in this District and maintains a branch at 1095 Avenue of Americas, New York, NY 10036;

- UBS AG is a financial services institution that regularly transacts business in this District and maintains at least one branch location there at 1285 Avenue of the Americas, New York, NY 10019;

- Wells Fargo Bank, N.A. is a financial services institution that regularly transacts business in this District and maintains several branches there, including a branch at 120 Seventh Avenue, New York, NY 10011;

- Beltone Financial USA, LLC is a company that maintains its headquarters at 708 Third Avenue, 19th Floor, New York City, NY 10017; and

- Auerbach Grayson and Company LLC is a brokerage firm that maintains its headquarters at 25 West 45th Street, New York City, NY 10036.

33. The amounts due pursuant to the Award that VEON seeks to recover are significant. VEON is now incurring additional costs as OTMTI refuses to make any payment while simultaneously resisting enforcement of the Award in England and elsewhere, thus forcing VEON to litigate in multiple countries. Without information as to the precise nature, location and value of OTMTI's assets, VEON risks being unable to fully recover the amounts due under the Award to which it is entitled.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 08/03/2018

_____
Stuart Terence Dutson

SUBSCRIBED AND SWORN to by the above-named declarant at Simmons & Simmons LLP, CityPoint, One Ropemaker Street in the City of London, England on the 8th day of March 2018 before me: _____

Notary Public, London, England
(Edward Gardiner)
My Commission Expires with Life

CHEESWRIGHTS
NOTARIES PUBLIC
Bankside House, 107 Leadenhall Street,
London EC3A 4AF
Telephone: 020 7623 9477
Facsimile: 020 7623 5428

|   | **APOSTILLE** | | |
|---|---|---|---|
|   | (Convention de La Haye du 5 octobre 1961) | | |
| 1. | **Country:**<br>Pays / Pais: | United Kingdom of Great Britain and Northern | |
|   | **This public document**<br>Le présent acte public / El presente documento público | | |
| 2. | **Has been signed by**<br>a été signé par<br>ha sido firmado por | Edward Gardiner | |
| 3. | **Acting in the capacity of**<br>agissant en qualité de<br>quien actúa en calidad de | Notary Public | |
| 4. | **Bears the seal / stamp of**<br>est revêtu du sceau / timbre de<br>y está revestido del sello / timbre de | The Said Notary Public | |
|   | **Certified**<br>Attesté / Certificado | | |
| 5. | **at**<br>á / en  London | 6. **the**<br>le / el día | 08 March 2018 |
| 7. | **by**<br>par / por | Her Majesty's Principal Secretary of State<br>for Foreign and Commonwealth Affairs | |
| 8. | **Number**<br>sous no / bajo el numero | APO-773480 | |
| 9. | **Seal / stamp**<br>Sceau / timbre<br>Sello / timbre | 10. **Signature**   J. Crook<br>Signature<br>Firma | |

This Apostille is not to be used in the UK and only confirms the authenticity of the signature, seal or stamp on the attached UK public document. It does not confirm the authenticity of the underlying document. Apostilles attached to documents that have been photocopied and certified in the UK confirm the signature of the UK official who conducted the certification only. It does not authenticate either the signature on the original document or the contents of the original document in any way.

If this document is to be used in a country not party to the Hague Convention of the 5th of October 1961, it should be presented to the consular section of the mission representing that country

To verify this apostille go to www.verifyapostille.service.gov.uk